OPINION OF THE COURT
Louis B. York, J.
Respondent moves the court for summary judgment. The respondent asserts that he is a rent-stabilized tenant and the *732 petition does not state any reason for the eviction pursuant to Rent Stabilization Code (9 NYCRR) §2524.3, which must result in the court granting his motion. Attached to respondent’s moving papers is an apartment registration issued by the New York State Division of Housing and Community Renewal (DHCR) dated June 19, 1985 indicating that the apartment is rent stabilized. Although not germane to the issues before the court, the respondent also asserts that he should be permitted to purchase his apartment.
Respondent moved into his apartment in November 1982. The last lease offered to respondent by the petitioner began November 1, 1982 and expired November 1, 1984. No renewal lease was ever sent to respondent since that time. The respondent states that the building is part of a tenant interim lease program (TIL) and he was given the opportunity of buying his apartment for $250 but because his rent was in arrears, this did not occur.
The petitioner asserts that respondent is not a rent-stabilized tenant, that this is a summary holdover proceeding predicated upon a month-to-month tenancy. It is undisputed that the City of New York (City) owned the apartment building before the cooperative conversion. The petitioner points to a prior case brought by petitioner in which the Civil Court found that another unrelated tenant in the subject building was found to be a month-to-month tenant. In that case a stipulation was in issue which is distinguishable from the facts in this case.
The petitioner is a cooperative corporation formed under Business Corporation Law § 402 and the Private Housing Finance Law article 11, and according to petitioner’s attorney affidavit, came into existence in or about January 1982 (the deed indicates that the premises were conveyed by the City on July 29, 1982).
The petitioner, by affidavit from Susan Gragin, a member of the petitioner’s board of directors, stated that "[t]he offering plan for the purchase of apartments at the premises was accepted for filing by the Attorney General of the State of New York in or about July, 1982.” The certificate of incorporation, article II, states that the corporation "is organized exclusively for the purpose of developing a housing project for persons of low income located at 512 East 11 Street, New York, New York.”
In reference to the purpose of the certificate of incorporation,
*733 "Notwithstanding any other provision contained herein, the following restrictions upon the use and sale of the housing project (the building) as a whole and upon the transfer of shares allocated to individual units shall apply:
"A. For ten years from the date of the conveyance of title to the building to the Corporation by the City of New York:
"1. The building shall provide housing for persons and families of low income as defined in Section 576 of Article XI of the Private Housing Finance Law”.
The respondent moved into the apartment in November 1982, after the time in which the premises were converted to cooperative ownership, according to the petitioner. The petitioner asserts that respondent was never offered the apartment for sale. The petitioner also argues that the building is exempt from the rent stabilization law under Rent Stabilization Code § 2520.11 (l) because it has an approved eviction plan under General Obligations Law § 352-eeee.
Rent Stabilization Code § 2522.5 (h) states,
"Leases for housing accommodations in cooperative- or condominium-owned buildings, or in a building for which the Attorney General has accepted for filing a plan to convert the building to cooperative or condominium ownership. [Emphasis in original.]
"(1) An owner of one or more housing accommodations subject to this Code may evict the tenant of such housing accommodation and/or refuse to renew a lease therefor, if such housing accommodation is in a building, group of buildings or development which is the subject of an Eviction Plan for conversion to cooperative or condominium ownership under General Business Law, section 352-eeee (hereinafter 'section 352-eeee’), provided:
"(i) The Attorney General has accepted for filing a plan to convert the building, group of buildings or development to cooperative or condominium ownership and an amendment declaring the plan effective as an Eviction Plan has been accepted for filing and a closing has been held thereunder; and
"(ii) three years have elapsed from the date on which the Attorney General has accepted for filing an amendment declaring the plan effective as an Eviction Plan, and at such time or thereafter the tenant’s lease has expired or has been cancelled pursuant to paragraph (2) of this subdivision [h].
"(2) Until the conditions set forth in paragraph (1) of this *734 subdivision [h] have been met, a tenant in occupancy of a housing accommodation subject to this Code shall have the right to a renewal lease or in the case of a permanent tenant, to continue his or her tenancy on the terms and conditions and at the rent and adjustments thereto as otherwise provided for in this Code. Notwithstanding the foregoing, any vacancy or renewal lease, entered into after the plan is accepted for filing by the Attorney General and such plan has been presented to the tenants in occupancy, may contain a provision authorizing the owner to cancel the lease as of a date not less than three years after the date an Eviction Plan has been declared effective (providing that title has passed to the cooperative corporation or condominium unit owners) on 90 days’ notice to the tenant In order to cancel a lease pursuant to such provision, the owner must give the tenant written notice of such election by certified mail no less than 90 days prior to the date upon which the cancellation is to become effective. ” (Emphasis added.)
Rent Stabilization Code § 2522.5 (h) provides for instances where a tenant may be evicted under a plan accepted by the Attorney-General. The landlord "may” put in a provision in a lease or renewal lease that the lease will terminate not less than three years after the effective date of the accepted eviction plan. Such termination must provide the tenant with no less than 90 days’ notice prior to the cancellation. (Rent Stabilization Code § 2522.5 [h].) In the matter before the court there is no such provision in the lease entered into with the respondent in 1982. The accepted plan specifies, "All present tenants* in this building, regardless of their status under Rent Control or Rent Stabilization before the City acquired title to this building, will have the exclusive right to purchase the shares in the co-op Corporation that are allocated to their apartments for the purchase price indicated in this Plan for a period of ninety (90) days from the date of presentation of the Plan. 'Date of presentation of the Plan’ means the date on which the Plan is first delivered to the tenants of the building.”
In the footnote indicated in this section, the plan states that "Occupants, whose prior tenancies have been terminated as of the date of the presentation of the Plan are not present tenants.” The respondent in this matter did not have his *735 tenancy terminated as of the date of the presentation of the plan, as petitioner acknowledges, he wasn’t living in the building at the time. There is no specific provision in the plan that deals with the respondent who moved in after the plan was accepted by the Attorney-General.
The deed which was conveyed indicates that it is "(a) subject to provisions of all laws, codes, statutes * * * (e) rights of tenants in possession * * *. [Petitioner may not lease] without permission of the City.”
The closest section in the plan accepted by the Attorney-General dealing with evictions of tenants, applicable to nonoccupant purchasers, states, "A non-occupant purchaser will have all the obligations and responsibilities of all other tenant co-operators, and all the obligations and responsibilities as a landlord under Rent Control or Rent Stabilization, including paying the full maintenance charges and any special assessments, performing all necessary maintenance, repairs and replacements in the apartment, and ensuring the full services are provided to the tenant in occupancy.”
In this matter petitioner issued a lease to respondent indicating that the apartment was registered and rent stabilized. The lease, under the General Obligations Law, could have contained a provision allowing its termination no less than three years from the date the plan was accepted (Rent Stabilization Code § 2522.5 [h]) upon 90 days’ notice. The petitioner chose not to insert this language into the lease. Now, seven years after first issuing a lease to respondent, petitioner insists that respondent is not a rent-stabilized tenant. Such a position is contrary to actions of the petitioner in issuing the 1982 lease and the provision of the plan dealing with nonoccupant purchasers that impose rent stabilization requirements. The actions of the petitioner, together with the accepted plan lacking any provision authorizing cancellation of the lease, estops the petitioner from asserting that the respondent is not rent stabilized.
Petitioner’s argument that it is not covered by the Rent Stabilization Code because the City of New York previously owned the premises is untenable. Even its own co-op conversion plan states, "The Rent Stabilization Law and Code of the City of New York ('Rent Stabilization’), and the General Business Law of the State of New York, which govern private co-op conversions and rent regulation, do not legally apply until the co-op corporation takes title to the building.” Clearly *736 under the terms of the plan, the Rent Stabilization Code applies.
General Obligations Law § 352-eeee et seq. sets strictures on cooperative conversions and it is the petitioner/tenant corporation, albeit through New York City’s interim lease program, that owned the building at the time of conversion. The petitioner has not shown its exemption from either the Rent Stabilization Code or the General Obligations Law. The mere fact that respondent was not in occupancy on the date that the plan was accepted by the Attorney-General is not relevant where the petitioner issued a lease beginning November 1982 and expiring November 1984. This lease clearly was entered into after conveyance by the City and the apartment registration indicates that in 1985 it was a rent-stabilized apartment. Moreover, petitioner readily admits that its corporation was formed pursuant to Business Corporation Law § 402 and Private Housing Finance Law article 11. Under Private Housing Finance Law § 576 (1), "Every housing development fund company * * * shall enter into an agreement with the commissioner or with the supervising agency * * * to be regulated”. The Commissioner shall set maximum rentals (Private Housing Finance Law § 576 [1] [a]), require that the dwellings be available for persons or families at certain income levels (Private Housing Finance Law § 576 [1] [b]), and require consent before disposal of any franchises of the corporation (Private Housing Finance Law § 576 [1] [e]). In addition, Private Housing Finance Law § 576-a (3) provides that conveyance of City property to a housing development fund company, such as the petitioner, is "conditioned on its continued use for purposes of housing, provisions requiring the approval of the municipality to any sale, transfer, exchange, assignment or lease, or otherwise.” The conveyance is subject to a reversion in the event of a breach. (Private Housing Finance Law § 576-a.) Petitioner is required to obtain the City’s approval when premises are leased under this section. It is likewise obligátory, based upon the purposes under Private Housing Finance Law § 571 et seq., to obtain the City’s approval for an eviction. The City being a necessary actor in the summary proceeding is tantamount to government involvement requiring notice of the reasons for a tenant’s eviction under elementary concepts of due process of law. (See, Golberg v Kelly, 397 US 254 [1970].)
In a recent case, 157 W. 123rd St. Tenants Assn. v Hickson (142 Misc 2d 984 [App Term, 1st Dept, Mar. 15, 1989]), the court held that an in rem building operated by a tenants *737 association under the TIL program must give notice of the reasons for eviction because the government was "entwined” with the conduct of the program. In the present case, for at least a period of 10 years, the petitioner must adhere to all the strictures imposed under the City’s regulations, the General Obligations Law, its own charter and its own agreement with the City. In addition, the petitioner must meet the requirements imposed under the Rent Stabilization Code. It is unclear in 157 W. 123rd St. Tenants Assn. v Hickson (supra) whether the building was conveyed to the petitioner or in a transitional stage prior to conveyance of the property, at the time the summary proceeding commenced, but this is insignificant because in the present situation there are enough City regulations in place after conveyance to "entwine” the government so that the grounds for eviction must be stated in the notice to terminate. For this reason alone, the petition at the very least must be dismissed for lack of proper notice. (157 W. 123rd St. Tenants Assn. v Hickson, supra.) But more than this, the respondent is a rent-stabilized tenant in his own right due to the issuance of a lease by petitioner in 1982 which indicated his status as such, requiring a reason for termination.
The petitioner’s motion is denied. Summary judgment is granted to respondent to the extent of finding that respondent is a rent-stabilized tenant entitled to notice of the reasons for his eviction and such notice being deficient, the petition is dismissed.